2011 OK CR 22

**STATE OF OKLAHOMA, Appellant,**

v.

**JULIA ISADORA DAVIS, JAMES ROBERT LEMMONS, CURTIS WAYNE PRADIA, Appellee.**

No. S–2010–1022.

Court of Criminal Appeals of Oklahoma.

Aug. 30, 2011.

¶ 0 An Appeal from the District Court of Payne County; The Honorable Michael Stano, Special Judge.

Debra Vincent, Stillwater, OK, attorney for defendants, Davis and Pradia at trial.

Frank Muret, Stillwater, OK, attorney for defendant, Lemmons at trial.

Tom Lee, Assistant District Attorney, Stillwater, OK, attorney for The State at trial.

Robert L. Hudson, District Attorney, Tom R. Lee, First Assistant District Attorney, Stillwater, OK, attorneys for The State on Appeal.

Mark Hoover, Norman, OK, attorney for appellees on Appeal.

### SUMMARY OPINION

C. JOHNSON, Judge.

¶ 1 Appellees, Julia Isadora Davis, James Robert Lemmons and Curtis Dwayne Pradia, were each charged in the District Court of Payne County, with the misdemeanor crime of Purchasing in Excess of Nine Grams of Pseudoephedrine Within a Thirty Day Period in Case Nos. CM–2010–333, CM–2009–1789 and CM–2009–1795, respectively. Pradia and Davis filed Demurrers to the Information and Motions to Dismiss. Lemmons filed a Motion to Quash.[1] The trial court sustained Appellees' demurrers. The district court ordered that the cases be dismissed and, at the State's request, ordered additionally that the Appellant be barred from further prosecution. The State appeals under 22 O.S.Supp.2009, § 1053(3).[2]

¶ 2 Appellant asks the following reserved question of law:

---

1. The District Court noted on the record that it would treat Lemmons' motion to quash as a demurrer.

2. At the State's request, the cases of the three Appellees were consolidated for appeal.

1. Did the district court err as a matter of law by ruling that the Informations did not charge a criminal offense and by ruling that the existence of a "real-time electronic log book" created pursuant to 63 O.S.Supp. 2009, § 2–309C(F) was a condition precedent to the existence and prosecution for an offense under 63 O.S.Supp.2005, § 2–212(A)(2)(b).[3]

¶ 3 Defendants Davis, Lemmons and Pradia were each charged with Purchasing in Excess of Nine Grams of Pseudoephedrine within a Thirty Day Period, a misdemeanor, in violation of 63 O.S.Supp.2005, § 2–212(A)(2). This statute refers to "[a]ny compound, mixture, or preparation containing any detectable quantity of pseudoephedrine, its salts or optical isomers, or salts of optical isomers" and provides that:

If any compound, mixture, or preparation as specified in this paragraph is dispensed, sold, or distributed in a pharmacy:

a. it shall be dispensed, sold, or distributed only by, or under the supervision of, a licensed pharmacist or a registered pharmacy technician, and

b. any person purchasing, receiving, or otherwise acquiring any compound, mixture, or preparation shall produce a driver license or other state-issued identification card and shall sign a written log, receipt, or other program or mechanism approved by the Oklahoma Bureau of Narcotics and Dangerous Drugs Control, showing:

(1) the date of the transaction,

(2) name of the purchaser,

(3) driver license number or state-issued identification number and state of residence of the purchaser,

(4) name and initials of the pharmacist or pharmacy technician conducting the transaction,

(5) the product being sold, and

(6) total quantity, in grams or milligrams, of pseudoephedrine purchased.

No person shall purchase, receive, or otherwise acquire more than nine (9) grams of any product, mixture, or preparation within any thirty-day period. Provided, the requirements of this subsection shall not apply to any quantity of such product, mixture or preparation dispensed pursuant to a valid prescription.

¶ 4 The district court ruled that the relevant statutes, taken as a whole, criminalize the purchase and possession of nine or more grams of pseudoephedrine. However, it ruled additionally that the provisions of section 2–212(A)(2) do not make the purchase of over nine grams of pseudoephedrine within a thirty day period a crime until the real-time log system authorized by 63 O.S.Supp.2009, § 2–309C is shown to be in full force and effect. The State avers that this statutory interpretation is in error and asks this Court to address the issue in this reserved question of law.

¶ 5 We review the trial court's construction and application of Oklahoma law *de novo,* without deference to the determination of the trial court. *State v. Duc Hong Pham Tran,* 2007 OK CR 39, ¶ 7, 172 P.3d 199, 200. This Court is committed to the rule of strict construction in the application of criminal statutes. *Id.* at ¶ 8, 172 P.3d at 200. "A statute should be given a construction according to the fair import of its words taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." *Coddington v. State,* 2006 OK CR 34, ¶ 56, 142 P.3d 437, 452–53 (internal citations omitted).

¶ 6 Title 63 O.S.Supp.2005, § 2–212(A)(2) very specifically makes it a crime for a person to purchase, receive, or otherwise acquire more than nine grams of any compound, mixture, or preparation containing any detectable quantity of pseudoephedrine, its salts or optical isomers, or salts of optical isomers within any thirty-day period without a valid prescription. In contrast, 63 O.S.Supp.2009, § 2–309C sets forth require-

---

**3.** Appellant did not specifically state its "reserved question of law" in court, in its Notice of Intent to Appeal or in its appellate brief. It did, however, attach to its Notice of Intent to Appeal an "advisory list of propositions of error that may be presented on appeal." The reserved question of law addressed in this opinion combines the second and third of the propositions included within the advisory list as these were clearly argued in Appellant's appellate brief.

ments for dispensers of pseudoephedrine. Section 2–309C(F) provides that:

> The Oklahoma State Bureau of Narcotics and Dangerous Drugs Control is authorized, by any funds available to it, to implement a real-time electronic logbook to monitor the sale of Schedule V products containing any detectable quantity of pseudoephedrine, its salts or optical isomers, or salts of optical isomers. Dispensers of such pseudoephedrine products shall report all such sales electronically pursuant to rules promulgated by the Oklahoma State Bureau of Narcotics and Dangerous Drugs Control. The reporting requirements of this title do not apply to any lawful sale of a Schedule V product containing any detectable quantity of pseudoephedrine, its salts or optical isomers, or salts of optical isomers, until such time that:
>
> 1. The Oklahoma State Bureau of Narcotics and Dangerous Drugs Control implements a statewide real-time logbook that authorized purchases and records purchaser information statewide; and
>
> 2. The Oklahoma State Bureau of Narcotics and Dangerous Drugs Control adopts rules for the reporting of sales of Schedule V product containing any detectable quantity of pseudoephedrine, its salts or optical isomers, or salts of optical isomers.

¶ 7 The real-time log is clearly a tool authorized to help monitor sales of pseudoephedrine, in part, to assist with the enforcement of section 2–212(A)(2). However, there is no indication from the plain language of either statute that the enforcement of section 2–212(A) is dependent upon the implementation of a real-time log to monitor the sales of pseudoephedrine. Violations of section 2–212(A) may well be more difficult to enforce without the real-time log authorized by section 2–309C(F), but the implementation of a real-time log is not a condition precedent to the enforcement of section 2–212(A)(2). The trial court's interpretation of these statutes to the contrary and its ruling that the Informations did not charge a criminal offense were in error.

### DECISION

¶ 8 The reserved question of law **ANSWERED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2011), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

A. JOHNSON, P.J., LEWIS, V.P.J., LUMPKIN and SMITH, JJ.: concur.